# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES ETHEREDGE | : | |
| **Plaintiff** | : | |
| v. | : | 3:11-CV-2330 |
| | : | (JUDGE MARIANI) |
| M.L. HENRY, *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendants' Motion to Dismiss (Doc. 41). For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion.

### II. Background

On Defendants' previous motion to dismiss, Magistrate Judge Blewitt recommended dismissing Plaintiff's First Amendment Retaliation claim with prejudice, Equal Protection Claim without prejudice, Defendants Saites and Nederostek without prejudice, and all facts in support of Plaintiff's claims arising before spring 2006 with prejudice. (Doc. 27). In the absence of any Objections to the Report & Recommendation ("R&R"), the Court adopted the R&R and granted Plaintiff leave to amend his Complaint. (Doc. 35). Plaintiff filed an Amended Complaint omitting any claims against Defendants Saites and Nederostek and re-asserting his Equal Protection Claim. (Am. Compl., Doc. 40). The allegations in support are as follows:

Plaintiff, James Etheredge, was at all times relevant to the Amended Complaint a Pennsylvania State Trooper assigned to Troop T – Pocono. (Am. Compl. at ¶ 2). Defendant M.L. Henry was Plaintiff's Captain and Troop T's Commander, Defendant Gerald Brahl was a Lieutenant and second-in-command of Troop T, and Defendant Judy Holly-Storms was a Sergeant, and later, Station Commander for Troop T. (*Id.* at ¶¶ 3-5).

For many years, Plaintiff has been "openly harassed and mistreated due to his sexual orientation" as a homosexual. (*Id.* at ¶ 8). In the spring of 2006, he filed a complaint of discrimination and harassment to the Pennsylvania State Police's EEO Office, which at that time, was headed by Defendant Henry. (*Id.* at ¶ 9). To this day, Plaintiff does not know what became of his EEO complaint, but he believes that Defendant Henry dismissed it within several months of September 2006. (*Id.* at ¶ 10).

On September 17, 2006, Plaintiff suffered an on-the-job injury and has remained off-duty ever since. (*Id.* at ¶¶ 7, 10). In the year following his injury, he "applied for and received both Heart and Lung Act and Worker's Compensation benefits, but continued to be subjected to supervisor ordered medical examinations regarding his return to work." (*Id.* at ¶ 12). In March 2008, Defendant Henry, who had been made Troop T Commander, ordered Plaintiff "to return to limited duty at the PSP Dunmore station near Scranton." (*Id.* at ¶ 13). Defendants Henry, Storm, and Brahl all represented to him "that there was no light duty work available at Pocono, but plaintiff is aware of others who have contemporaneously done light duty assignments there such as PSP Trooper Steve Boettger." (*Id.*). Continuing into

December 2009, Defendant Henry "began to repeatedly request (4 to 5 times or more) that plaintiff must return to work. This was despite the fact that Trooper Etheredge's doctors . . . Dr. Manzella and Dr. Janerich had said no work until further notice," based on a nerve function study which showed nerve impingement. (*Id.* at ¶ 16).

Also in 2009, Defendant Holly-Storms became Commander at Troop T – Pocono and "openly stated on several occasions to Cpl. Verbonitz of Troop T that her 'life's mission' was to get Etheredge back to work." (*Id.* at ¶ 18). She allegedly "left dozens and dozens of threatening and antagonistic messages on plaintiff's personal cell phone, home phone, and frequently visited his property during 2009 and on into 2010. Sometimes she simply walked around outside plaintiff's home, checking car tags and showing her presence in an effort to intimidate Trooper Etheredge." (*Id.* at ¶¶ 19, 21). She also allegedly "ran illegal NCIC/CLEAN checks on plaintiff's vehicles because printouts were seen on her desk. These were the same vehicles, many of them classic cars, that Storms went after (and had others go after) in order to harass Etheredge." (*Id.* at ¶ 19).

> Sometime in the early morning hours of November 18, 2009, plaintiff was awakened by loud and repetitive banging on his door. This was Trooper Goetz (accompanied by Trooper Blatt) who was at plaintiff's premises to deliver the aforementioned notice in the middle of the night. Goetz got back into his patrol car, and, as plaintiff began to descend the stairs inside his house, Goetz aimed his patrol car spotlight inside plaintiff's house directly into plaintiff's face. Plaintiff was literally knocked back by the bright light, which caused him to fall down the stairs resulting in serious injuries. Plaintiff was transported by helicopter to the hospital, and a couple of hours later, while plaintiff was hooked up to oxygen and an intravenous bag, Goetz and his partner Blatt came into his hospital room and instructed plaintiff to sign for the notice. This incident caused plaintiff serious setbacks in his recovery from his

3

> prior injuries, in addition to causing new injuries, and severe psychological turmoil. Plaintiff learned approximately 6 to 7 months later in the spring of 2010 that Henry, Storms, and Brahl had planned and directed Goetz in the assault on plaintiff.

(*Id.* at ¶ 22).

Moreover, in late December 2009, Defendant Holly-Storms induced a local magistrate "to have code enforcement officers put pressure on plaintiff to trump up violations and put warnings on a commercial property owned by plaintiff. Those efforts did, indeed, ensue, and have continued through the present. For the next 4-5 months into 2010 plaintiff was plagued by baseless warnings." (*Id.* at ¶ 20). Finally, on December 18, 2009, "plaintiff was again handed papers by Holly-Storms, signed by Henry, directing his return to work at Lehighton Barracks within 5 days, or be fired for job abandonment." (*Id.* at ¶ 26). Fortunately, a station commander at Lehighton was able to put Plaintiff "through on sick leave. When, however, plaintiff received his sick leave pay, more than half of it was garnished as wrongfully paid Heart and Lung benefits. Although unsure, plaintiff believes this may have since been made good." (*Id.*).

"At the same time Steve Boettger, as an example, was treated well and was not exposed to the harassment and retaliation, violating plaintiff's equal protection rights." (*Id.* at ¶ 17; see also ¶ 26). "Boettger was a Trooper holding the same title and position as plaintiff and was off work at the same time." (*Id.* at ¶ 28).

Meanwhile, in August 2009, Plaintiff's Worker's Compensation and Heart and Lung benefits were "unilaterally frozen . . . without any notice or cause." (*Id.* at ¶ 14). "In an April,

4

2010 arbitration hearing evidence was presented which contradicted the PSP's position that there was no light duty work available at the Pocono station, and plaintiff had even requested the return to either of the other 2 local stations in the fall of 2009." (*Id.* at ¶ 27). On July 26, 2010, an arbitrator "cut off Heart and Lung Act benefits for plaintiff effective that date, but . . . reinstated all past benefits up until that date." (*Id.* at ¶¶ 14, 28). Furthermore, "Plaintiff was unlawfully deprived of his pay from August 19, 2009 until February 2010. Plaintiff was forced to run up his credit-card debt to $20,500.00." (*Id.* at ¶ 29).

Plaintiff attached to his Amended Complaint the deposition of Corporal Jeffrey Taylor, now retired. (*See* Doc. 39). In his deposition, Taylor testified that "[t]here's only one difference between Trooper Etheredge and Trooper Boettger . . . . They both worked for me, . . . Jim is a homosexual and Trooper Boettger isn't." (*Id.* at 24:14-23). Taylor confirmed that Trooper Boettger is based in Troop T – Pocono. (*Id.* at 17:5-7).

According to Taylor, Trooper Boettger was injured on October 31, 2005, wherein he "hit a deer, cracked the headlamp cover [of his car], and [sustained] a small scuff on the right front fender." (*Id.* at 11:2-9). In contrast, Plaintiff "was involved in two crashes," one on February 14, 2006, and another on September 17, 2006. (*Id.* at 11:9-24). The second crash was much more serious than the first: "[h]e was backing up, lost control; totaled the car," and there was "extensive, horrific damage to the car." (*Id.* at 11:24-12:5). After their respective car accidents, both troopers received heart and lung benefits. (*Id.* at 12:9-16).

5

By the time Plaintiff went off-duty, Trooper Boettger "had been off for 9 months prior to – actually almost 11 months or 10 months" longer. In addition to being treated by their own doctors, both troopers underwent independent medical exams which were reviewed by the State Police Medical Officer. (*Id.* at 12:24-13:6).

In Trooper Boettger's case, "[h]is doctor said he cannot return to work. The SPMO [State Police Medical Officer] said he can return to work, [and] the IME doctor said he can return to work." (*Id.* at 14:11-19). In Plaintiff's case, "[he] had the same medical documentation that Trooper Boettger did. Family doctor said don't return to work, SPMO said return, IME said return." (*Id.* at 15:11-15).

Although Plaintiff's treating physicians did not recommend he return to work, whereas the SPMO and IME did (the same scenario as Trooper Boettger), Defendants "didn't listen to his family doctor, they forced him . . . to use his sick and annual, [and] they forced him into a no pay situation." (*Id.* at 15:6-11). In contrast, Defendants "never forced [Boettger] on sick leave, annual leave, . . . they haven't forced him to do anything, [and] they've kept him on heart and lung." (*Id.* at 16:2-5).

### III. Motion to Dismiss

To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a plaintiff must state a "'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)). FED. R. CIV. P. 8(a)(2) requires only that a pleading contain "'a short and plain

6

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)).

"The court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). In addition, "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *In re New Jersey Title Ins. Litigation*, 683 F.3d 451, 462 (3d Cir. 2012). "The Rule 15(a) factors include undue delay, bad faith, prejudice, or futility." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230-31 (3d Cir. 2011) (internal citation and quotation marks omitted).

## IV. Analysis

### Equal Protection Claim

To establish a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) he was deprived of a federal right; and (2) the person who deprived him of that right acted under color of state law. *Burrella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007). Section 1983 is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004).

Plaintiff argues that Defendants have discriminated against him based on his gender and sexual orientation. The Equal Protection Clause of the Fourteenth Amendment commands

7

that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

To establish a gender discrimination claim under the Equal Protection Clause pursuant to Section 1983, a plaintiff must show: (1) disparate treatment in relation to other similarly situated employees, and (2) that the illicit treatment was based on gender. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.1990). "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (internal citations and quotation marks omitted).

Plaintiff complains that he was forced to return to work and was stripped of certain benefits because he was male. However, in his Amended Complaint, the only other person Plaintiff identifies as a similarly situated person who was treated better than him is Steve Boettger, also a male. These allegations belie Plaintiff's contention that he was treated unfairly based on his gender when compared to others similarly situated outside of his protected class; that is, *females* holding the rank of trooper stationed at the Troop T barracks. There is no allegation that a similarly situated female trooper was treated differently than Plaintiff. Therefore, the Court concludes that Plaintiff offers no allegations in support of a gender-based Equal Protection claim and will grant Defendant's motion to dismiss this claim.

Plaintiff also brings an Equal Protection claim based on his homosexuality. Defendants argue that Plaintiff, as a homosexual, is not a member of a suspect class, and thus, only rational basis review applies to their actions with respect to him. "If state action does not burden a fundamental Constitutional right or target a suspect class, the challenged

8

classification must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Doe v. Pennsylvania Bd. of Prob. & Parole*, 513 F.3d 95, 107 (3d Cir. 2008) (internal citations and quotation marks ornitted).[1]

Despite their arguments, Defendants have not yet articulated to the Court what their purported "reasonably conceivable state of facts that could provide a rational basis" for their treatment of Plaintiff were. At this stage of the case, it would be premature for the Court to dismiss this particular claim. Therefore, the Court will deny without prejudice Defendants' motion to dismiss Plaintiff's Equal Protection claim based on his status as a homosexual.

*Personal Involvement: Respondeat Superior*

Defendants further contend that Plaintiff has failed to allege another facet of how Steve Boettger was a "similarly situated" individual for Equal Protection purposes; namely, that Defendants Henry, Brahl, and Holly-Storms also supervised Trooper Boettger and treated him better than they treated Plaintiff.

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011).

---

[1] Plaintiff agrees with Defendants that "sexual orientation is not . . .a suspect category" for Equal Protection purposes. (Am. Compl. at ¶ 10).

9

Although Plaintiff has not alleged specifically that Defendants Henry, Brahl, and Holly-Storms were the supervisors of both Plaintiff and Trooper Boettger at the Troop T barracks, the Court infers that Plaintiff is making this argument based on a reading of the Amended Complaint and Corporal Taylor's deposition testimony.

For instance, Plaintiff alleges that "Boettger was a Trooper holding the same title and position as plaintiff and was off work at the same time." (Am. Compl. at ¶ 28). Plaintiff also attached to his Amended Complaint the deposition of Corporal Jeffrey Taylor. (See Doc. 39). In his deposition, Taylor testified that "[t]here's only one difference between Trooper Etheredge and Trooper Boettger . . . . They both worked for me, . . . Jim is a homosexual and Trooper Boettger isn't." (Id. at 24:14-23). Taylor confirmed that Trooper Boettger is based in Troop T – Pocono. (Id. at 17:5-7). Finally, Plaintiff alleged that "Defendant M.L. Henry, currently a Major, was, at all times relevant hereto, a Captain and Troop T's Commander. At certain other relevant times, Henry was the Lieutenant in charge of the PSP Equal Employment Office." (Am. Compl. at ¶ 3). "Defendant Gerald Brahl was, at all relevant times, a Lieutenant and second-in-command of Troop T. He was stationed in King of Prussia." (Id. at ¶ 4). "Defendant Judy Holly-Storms was, at all relevant times, a Sergeant and Station Commander for Troop T, Pocono." (Id. at ¶ 5).

Based on the allegations of the Amended Complaint and Corporal Taylor's deposition testimony, the Court infers that Defendants Henry, Brahl, and Holly-Storms were the decision-makers with respect to employment matters at the relevant time period for both

10

Plaintiff and Trooper Boettger. As such, the Court will deny without prejudice Defendants' motion to dismiss for lack of personal involvement. Following the close of discovery, Defendants may renew their arguments in a subsequent dispositive motion if they so wish.

## Statute of Limitations

Plaintiff brings his Equal Protection claims under 42 U.S.C. § 1983. "The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *Id.* (citing 42 PA. CONS. STAT. § 5524(2)). "Federal law governs a cause of action's accrual date. Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (internal citations and quotation marks omitted).

The "continuing violations" doctrine, however, is an "equitable exception to the timely filing requirement." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (holding that the township's imposition of two liens against the plaintiffs' property at least six years before the plaintiffs filed suit did not constitute a "continuing violation" of the plaintiffs' substantive due process rights). As such, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* (internal citations and quotation marks omitted).

11

> In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is more than the occurrence of isolated or sporadic acts. Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter - whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency - whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence - whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. The consideration of degree of permanence is the most important of the factors.

*Id.* (internal citations and quotation marks omitted).

The Court in *Cowell* concluded that "the plaintiffs were aware of the wrongfulness of the liens when the liens were imposed in 1992 and 1993. Therefore, the plaintiffs should have brought a claim to strike the liens in state court and filed a § 1983 claim within the applicable limitations periods." *Id.* at 295. Allowing plaintiffs to bring a claim based on the imposition of the liens "would be unfair to the Township and contrary to the policy rationale of the statute of limitations." *Id.*

Similarly, allowing Plaintiff here to allege facts dating back to the spring of 2006 would be unfair to Defendants when Plaintiff clearly could have brought suit as early as 2006 and any continued wrongs could have been averted. *See also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within [two years] of the date of the act or lose the ability to recover for it."); *Cowell*, 263 F.3d at 295 (citing to *Sameric Corp. of Delaware v. City of Philadelphia*,

142 F.3d 582, 599 (3d Cir.1998) and "noting that the denial of the permit [in *Sameric*] gave rise to an independent cause of action and should have been pursued as such. Thus, [in *Sameric*] we held that the continuing violations doctrine could not be applied to revive the claim involving the permit denial."); *see also 287 Corp. Ctr. Assocs. v. Twp. of Bridgewater*, 101 F.3d 320, 324 (3d Cir. 1996) (affirming the district court's dismissal of the plaintiff's takings claim filed in 1994 and declining to apply the "continuing wrong" doctrine because "[t]he Township has not committed an affirmative act since 1985," and the township's allegedly improper levy of commercial taxes on the plaintiff "year after year" was not an "affirmative act" which would constitute a "continuing wrong") (citing *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991)).

Defendants argue that Plaintiff's claims should be "limited to facts arising since March of 2008" instead of spring 2006. (Defs.' Br. in Supp., Doc. 42, at 19). In support of their argument, Defendants contend that other than Plaintiff's allegation that Defendant Henry dismissed Plaintiff's EEO complaint "[s]ometime within several months" after Plaintiff's September 2006 on-duty injury (Am. Compl. at ¶ 10), Plaintiff makes no allegations of any conduct whatsoever on the part of the defendants.[2] That is, (1) learning of Defendant Henry's allegedly improper dismissal of his EEO complaint and (2) being ordered to return to work in March 2008 were isolated and sporadic incidents that do not qualify as

---

[2] Plaintiff does allege that after his September 2006 on-duty injury, he "continued to be subjected to supervisor ordered medical examinations regarding his return to work." (Am. Compl. at ¶ 12). However, Corporal Taylor testified that Trooper Boettger also underwent medical examinations pertaining to his return to work. (Taylor Dep. at 12:24-13:6). Therefore, according to Plaintiff's submissions, both he and Trooper Boettger were treated the same in this respect.

13

connected events under the continuing violations doctrine. According to Defendants, Plaintiff could have brought suit upon learning of the allegedly improper dismissal of his EEO complaint instead of waiting until December 2011.[3]

Without citing to any authority, Plaintiff responds that

> In this treatment suffered by Trooper Etheredge was continuing and long going. [Sic]. The mistreatment began with an obvious internal policy concluding that Etheridge [sic] was unwanted by virtue of his sexual orientation (incidental to his gender). His EEOC issues raise similar mistreatment at the hands of ML Henry in particular. This court can act within its discretionary powers to find a continuing violation.

(Pl.'s Brief in Opposition, Doc. 45, at 6).

The Court agrees with Defendants and finds that allegations pertaining to Plaintiff's sole remaining claim of Equal Protection violations stemming from his sexual orientation will be limited to facts arising from March 2008 when he was first ordered to return to work. There was at least a year in which Defendants allegedly took no actions against him (i.e. several months after September 2006 and March 2008), and the allegedly improper dismissal of his EEO complaint and the initial order to return to work were actions that were too different in kind and remote from one another to establish a pattern of continuous and ongoing alleged behavior by Defendants.

Therefore, the Court will dismiss all factual allegations arising before March 2008 from the Amended Complaint.

---

[3] Defendants appear to concede that even though the appropriate statute of limitations in this instance is two years (which would normally limit Plaintiff's case to claims arising after December 2009), Defendants' alleged actions in attempting to return Plaintiff to work from March 2008 were continuous, and not isolated or sporadic. (Defs.' Br. in Supp., Doc. 42, at 19-21).

14

## V. Conclusion

For the foregoing reasons, the Court will grant in party and deny in part Defendants' Motion to Dismiss (Doc. 41). The Court will dismiss Plaintiff's gender-based Equal Protection claim and all facts arising before March 2008 in support of his sole remaining claim of an Equal Protection violation based on his sexual orientation. A separate Order follows.

_____
Robert D. Mariani
United States District Judge